NOVEMBER 20, 1801.

# The Heirs of John Crow *v.* James Brown.

*Upon an appeal from a decree of the General Court.*

1. Where the only call to fix the location of an entry, or settlement, is that it shall include the locator's improvement, the entry must be surveyed in a square with the improvement at the center, and with the lines to the cardinal points.

2. A party will not be estopped by his participation or acquiescence in the acts of another prejudicial to himself, where he is not at the time in a situation to know the effect of those acts upon his rights.

John Crow and his heirs having been complainants in the court below, it is proper first to inquire into the validity of their claim to the land in contest. The location of Crow's settlement with the commissioners and its entry with the surveyor are in substance the same—to be laid off half way between two cabins (with a square line) that the said Crow built in 1774, one cabin lying south-west of Stephen Fisher's garrison, known by the name of Rees' lottery cabin, the other north-east from the said station. It seems to be agreed that the first cabin called for was near the place marked in the surveyor's report "the town spring," and the other, it is probable, was near the flat spring, at least it was north-east or north-eastwardly from Fisher's station. Now, from inspection of the surveyor's report, if his settlement had been surveyed half way between those cabins it would not have interfered with the surveys of the appellee; nor has it been so surveyed as to interfere with them. And as to Crow's pre-emption entry, it expressly calls to adjoin the appellee, which must be construed as giving place to his settlement and pre-emption so far as they should be legally entered and surveyed. The location of the appellee's settlement only calls to include his improvement, which, conformably to repeated decisions, ought to have been surveyed to include his improvement in the center of a square with the lines to the cardinal points; and his pre-emption was entered to adjoin the settlement on the west, south, and east sides. So that the appellants' pre-emption ought not to have been extended further south than the north boundary of the appellee's settlement and

pre-emption when laid off according to their entries. Indeed, the last call in the appellant's pre-emption entry is "to extend south for quantity." But the effect which that call ought to have, if any, can not be ascertained before it is shown that all the other claims it calls to adjoin have been legally entered and surveyed, which has not been done. And it ought to be noted, that it appears that the claim of Jones, which is called for in the complainants' pre-emption entry, was not located as the law requires; neither does the entry fix any western boundary for their pre-emption; nor does it call to adjoin. their settlement, or to exclude it. But, could all these objections to the appellants' pre-emption entry be removed, the call "south for quantity" can not affect the appellee's settlement for pre-emption, so far as they have been surveyed agreeably to their entries, without making that call repugnant to the call "to adjoin Brown." But it is obvious, from the surveyor's report, that the surveys of the appellee on the land in contest have not wholly been so made; and it also appears, from the other exhibits, that the appellants' survey was first made, and that the appellee had actual if not record notice thereof prior to the dates of his surveys. Therefore, on general principles, so much of the appellee's surveys as have been made contrary to his entries, and fall within the complainants' survey, they ought to recover.

The complainants, however, have surveyed and assert an equitable as well as a legal right to a much larger quantity of the land contained in the surveys of the appellee. They allege that in the year 1774 John Crow had two cabins, one near the town spring, the other near Nourse's spring, and that James Brown had a cabin at or near the improvement for which he obtained a settlement and pre-emption; and also that they then agreed to divide the lands between those cabins, by lines crossing half way at right angles to lines run from Brown's cabin to each of Crow's cabins. Considering the agreement to be proven, the court will only advert to its rational import. If either party failed, when he had an opportunity, to acquire a legal right to the lands he contemplated, the agreement would no longer bind the other, because there would afterward be no sufficient consideration to support it. But it does not appear that Crow ever had any location or entry which included the cabin near Nourse's spring, nor for any of the land between it and Brown's cabin; therefore, in a reasonable time after the opening of the land office in 1779, the obligation of the

agreement on Brown did certainly cease. Again, if at any time either party materially violated the contract, the other party, on that account, was left at liberty to depart from it. But Crow made the first survey, and violated the agreement by departing from the courses which it was agreed those half-way lines should run, and by running the lines of his surveys nigher to Brown's cabin than the agreement permitted. It is further alleged by the appellants, that at the time of making their surveys, the appellee was present, and consented that they might be so made. If the facts had been proven, it is doubtful how far a consent of this kind, given without any rational inducement, and which, from the exhibits, must have proceeded from ignorance, and the overbearing conduct of Crow and one of his friends whilst the surveys were making, ought to be binding. But it is only proven, first, that the appellee was one of the chain carriers at the commencement of the survey, and did not positively forbid the appellants' east line to be extended to the three sugar trees near the bank of Clark's run which were marked as one of their corners. And if this negative consent had been more positive, it ought not to be presumed that he then knew how the surveys would be closed, nor that his interest would be affected thereby. Indeed, the presumption is violent that he had then no certain conception of either of those circumstances; more especially as in the progress of making the survey he warmly remonstrated against that corner remaining. Therefore, it seems to the court that under the disadvantages which have been suggested, even if the consent had been explicit, as it was so quickly retracted, it ought not to bind him. Secondly, it is proven that on the same day, he consented that the appellants' southern boundary might be a line crossing half way and at right angles to a line from his cabin to that at the town spring, and that when Crow determined to run a due west and east line, as being more conformable to the shape he thought it necessary to give his survey, he also consented thereto, provided it should be extended to the said east line. So that it is only necessary to remark that the appellee, in making his surveys, has, contrary to his interest, bounded them on the north by this line, notwithstanding the condition on which he gave his consent was not complied with; and, unluckily for him, he must now sustain an additional loss by surveying imprudently in other respects.

Wherefore, it is decreed and ordered, that the said decree of the general court be reversed, it not being consonant with the fore-

going opinion, and that the appellee do pay to the appellants their costs expended in the prosecution of this appeal. And it is further decreed and ordered, that the suit be remanded to the said general court, that it may cause the appellee's settlement of four hundred acres to be laid off in a square, with the lines to the cardinal points, and the place of his cabin made in the year 1774 in the center, and his pre-emption of one thousand acres adjoining thereto on the west, south, and east sides, and so as to be in one survey, and extend equal distances from the said sides; also, that it may cause to be ascertained the metes, bounds, and quantity of so much of the appellants' pre-emption survey as interferes with that part of the appellee's settlement survey which does not lie within the bounds of its entry, and is not included within his survey of three hundred and forty-seven acres made on his pre-emption warrant, and enter up a decree that the appellee convey the same, if any there be, to the appellants by deed with special warranty, and dissolve the appellants' injunction as to the residue; likewise, that it may cause to be ascertained the metes, bounds, and quantity of so much of the appellee's said pre-emption survey as lies within the bounds of his entry on his pre-emption warrant, and also within the appellants' said pre-emption survey, and enter up a decree that the appellants convey the same to the appellee by deed with special warranty; and moreover, that it make such further decrees and orders in the suit as law and equity may require; which is ordered to be certified to the said court.