NelsON, J.,
delivered the opinion of the Court.
"William J. Cleveland and others, filed their bill against Wiley Kemp and others, in the County Court of Smith county, for the sale, in lieu of partition, of the lands which had descended to the very numerous *570 cbildren and grand-children of William Cleveland, deceased; in which they prayed, among other things, that the proceeds of sale, when collected, should be distributed among those entitled, according to their respective interests, as set forth in the petition. A sale of the land, in parcels and on credit, was made under the authority of the court; and in the decree of confirmation, pronounced on the 5th of May, 1857, it was, among other things, directed that “the Clerk distribute the proceeds of sale, when collected, according to the prayer of the bill, excluding the share of Joseph Cleveland, deceased, who had received advancements to an amount larger than one-seventeenth of the proceeds of sales.” The complainant, in this case, who was the Clerk of the County Court, filed this bill, which has been styled a bill of interpleader, against some thirty-six persons, who are named, and the children of some of the deceased children, whose names are unknown; the children of the said William Cleveland being seventeen in number, and the names and number of several of the grand-children being omitted. The bill of interpleader specifies various persons, among whom there are conflicting claims to the fund in complainant’s hands, alleges that he has already paid out more, perhaps, than was prudent, and prays that the parties be required to interplead so that their respective rights may be ascertained, and that he may be directed and protected by a decree of the court.
To this bill various answers were filed by parties who claim the fund, or the larger part thereof. In the progress of the cause, the complainant was directed *571 in a decree pronounced at February Term, 1860, “to loan out the funds in his hands until the second Monday in August next,” thereafter; and, at the August Term, 1860, he was directed “to loan out the ■ funds in his hands, taking notes, with good security, payable at least three days previous to the next Term,” At the February Term, 1861, it was “decreed by the court that complainant have the funds in his hands ready at the next term for distribution; that he collect all the rest, if practicable, including the money loaned out by him, with interest thereon.” Said decree further directs as follows, viz: “The complainant will let the heirs of Smith Gregory, or their assigns, who,, it appears, have not received any of the proceeds of the sale of the land of Wm. Cleveland, deceased, [have as much] as they may choose to receive, upon their giving bond and security to refund, if the court, upon final decree, should so order.”
No further steps appear to have been taken in the cause until August Term, 1865; nor does it appear, from the record, that any term of the Chancery Court at Carthage was held in the intermediate period, which was during the time of the late civil war. On the 22cl of August, 1865, a decree was pronounced in the cause, in which it is stated that it was heard “in the presence of solicitors on both sides,” upon the report of the Clerk and Master made at the February Term, 1861, showing that there was in complainant’s hands, on the 12th of February, 1861, $1,023.45; that the interest thereon, from the 12th of February, 1861, to the date of the decree, was $276.77, making an ag *572 gregate of thirteen hundred dollars, which amount the complainant was directed to pay into the Master’s office within three months, and, if not paid, it was directed that execution should issue. It was further ordered that the Master should, at the next term, report the condition of the balance of the fund, collected and not collected, meaning a judgment against J. B. Gregory and others for $289.79, and a balance due on L. C. Winkler’s note of $210, which, together with the said sum of $1,023.45, made an aggregate of $1,523.22 belonging to the estate, and not disbursed, as shown in the Master’s said report, of 12th February, 1861.
On the 22d of November, 1865, the complainant filed a bill of review, in which he alleges that the decree against him for the interest from the 12th of February, 1861, to the 22d of August, 1865, is erroneous, in consequence of the directions given to him in the decree pronounced at February Term, 1861. Fie alleges, further, that the fund collected by him was in notes on the Bank of Tennessee, and other specified banks, which have greatly depreciated in value, although nearly at par when received.
The “joint demurrer, plea and answer of Curtis and William Gregory to the bill of review,” was filed on the 17th of February, 1866; and on the 21st day of the same month a decree was pronounced, in which it is declared that the allegations of equity in the bill are fully met and denied; that there is no equity whatever in complainant’s bill; that no good ground is shown for a bill of review, and that the demurrer thereto is well taken, &c. Thereupon, a decree was pro *573 nounced against complainant and his securities in the injunction bond, for $1,330, and costs of suitj and the order to the Clerk and Master, made at the previous term, requiring him to report as to the condition of the balance of the fund, was revived. A bill of exceptions, in which all the pleadings and proofs in the County and Chancery courts are set out, was tendered, in behalf of complainants, and signed by the Chancellor. It appears from the bill of exceptions that, on the 22d of February, 1866, the complainant moved the court for leave to amend his bill of review by filing an amended bill, which is exhibited as part of the bill of exceptions, but that this motion was refused; and to the action of the court in refusing, as well as to the decree of the court, complainant excepted, and prayed an appeal to this court, which, as the bill of exceptions states, was granted “upon his giving bond and good security, as required by law, on or before the April rules.” A memorandum below the bill of exceptions, signed by the Chancellor, and dated the 22d of February, 1866, states that, “upon reconsideration and re-hearing,” he refuses to grant an appeal, in this case, because the decree from which an appeal is . pVayed is not final; and a transcript of the record was duly filed in this court, as a writ of error, on the 7th of January, 1867.
In the joint demurrer, plea and answer, five causes of demurrer are assigned; 1st, That the decree sought to be reviewed is interlocutory, not final; 2d, That, as the cause was still pending, the relief sought could be obtained, more appropriately without any bill of review; 3d, That there is no error of law, or fact, apparent on *574 the face of the decree; 4th, That the money should have been paid into the office at the time of filing the bill;- 5th, That, as the decree shows that there are other effects in complainant’s hands beside the $1,023.43, relief, as to the interest, could have been afforded without such a proceeding. The plea and answer alleges that complainant did not have one dollar of the fund on hand when he filed his bill of interpleader; that he has caused unnecessary and expensive litigation; that the decree was fairly obtained, after full discussion by counsel; that the claim of respondents, to ten out of sixteen shares of the estate, was fully set forth in the answer to the original proceedings in the County Court; that the report, in the Chancery Court, made at February Term, 1861, was not excepted to; that but two shares were, in reality, contested, and these had been paid before filing the bill of interpleader; that complainant, before filing his bill, had paid seven other shares, but had paid nothing to respondents; that complainants had, or might have, collected the money eighteen months before filing the bill; that, in several other particulars, which are specified, the complainant had failed to discharge his duty; that he might, and should, have loaned out the money; that he had promised to pay interest; that he had not kept on hand the identical fund collected ; and that, for various causes, he should be held to account for interest from April and October, 1868, and not from February, 1861.
No proof was taken in support of the plea and answer.
The practice, as to bills of review, has so often been *575 considered by this Court, in reported cases, that it is unnecessary to cite, or refer to, them at length. In the case under consideration, however, an attempt is made to join the demurrer, plea, and answer, to the bill of review, as one defense. There is no doubt that á" defendant may demur to one part of a bill, plead to another, answer to another, and disclaim as to another: Story’s Eq. PL, §§ 437, 439, 442. Different grounds of defense may be applicable to different parts of a bill; but it is said by Mr. Justice Story, that “care must be taken that each of these modes of defense is actually applied to different and distinct parts of the bill, and that, as applied, each is consistent with the other, so that one does not overrule the other. Thus, for example, if there is a demurrer to the whole bill, an answer to a part thereof, is inconsistent, and the demurrer will be overruled. For the same reason, if there is a demurrer to a part of a bill, there can not be a plea, or answer, to the same part, without overruling the demurrer:” Story’s Eq. PL, § 442; Ibid, §§ 462, 465. Again: it is laid down, as a rule of equity pleading, that “if a demurrer be too general, that is, if it covers or applies to the whole bill, when it is good to part only; or if it is a demurrer to a part of a bill only, but yet is not good to the full extent which it covers, but is so to a part only, it will be overruled; for, it is a general rule, that a demurrer (it is otherwise as to a plea) can not be good as to a part which it covers, and bad as to the rest, and, therefore, it must stand, or fall, altogether. So, if a demurrer does not cover so much of the bill as it might by law have extended to, it has been held to be bad. *576 But a demurrer may be put in and several causes assigned; and, if one cause is good to tbe whole extent of the demurrer, and another is bad, the demurrer will be sustained; for, if both were bad, the defendant may, ore terms, assign new causes of demurrer at the argument to ipatters of substance, although not to matters of form; so that any good cause existing of record, or otherwise assigned, will do:” Story’s Eq. PL, § 443.
In this case, it is not easy to distinguish what is relied upon by way of plea from the other matters stated in the answer, but it is clear that the demurrer and the answer were, each, intended to extend, and do extend, to the entire bill of review. Some of the causes of demurrer extend to the original bill of interpleader, and were waived by the answers thereto. Two of the causes are entitled, however, to consideration: 1st. Was the decree final in such a sense as that a bill of review can be maintained? What is a final decree, has been frequently considered: See Helms v. Mynatt, 6 Cold., 220; Gill v. Creed, 3 Cold., 297, 298; Delap v. Hunter, 1 Sneed, 104; Allen v. Barksdale, 1 Head, 240, 241; Overton v. Bigelow, 10 Yer., 52, 53; Berryhill v. McKee, 3 Yer., 159; Meek v. Mathes, 1 Heis., 537; Abbott v. Fagg, 1 Heis., 748; Harrison v. Farnsworth, Ibid, 753.
Within the spirit and meaning of most of these cases, we hold that the decree, of 2nd of August, 1865, against complainant, for thirteen hundred dollars, and awarding execution, was a final decree in such a sense as that, with or without leave from the Chancellor, it could be brought here by appeal or writ of error. No *577 further action was taken, or intended to be taken, in regard to the sum of money adjudged. No account was ordered, or intended to be ordered, in reference to it. The account directed has relation alone to two separate and independent items. Where the general principles are settled upon which an account is to be taken, and the taking of the account is necessary to the ascertainment of the final liability, the appeal, or writ of error, can not be prosecuted as a matter of right; and in such a case, leave to prosecute the appeal, before the taking of the account, is necessary. But where the account ordered is entirely independent of the decree for a sum certain, the appeal may be prosecuted either before or after the final decree adjudicating every question in the cause, and this as a matter of right: See Story's Eq. PL, § 408, a.
The decree pronounced at August Term, 1865, was erroneous upon its face, as being contrary to the decree' pronounced in the same cause, and between the same parties, at the February Term, 1861. The decree last mentioned had directed the complainant to have the fund in his hands ready, at the next Term, for distribution; and had directed payment to be made to the heirs of Smith Gregory, on their executing a bond.
The complainant could not, without a direct violation of this order, have loaned out the fund. It was his duty to obey the mandate of the court, and its order operated beyond the term succeeding the February Term, 1861. How could complainant know when Smith Gregory’s heirs would apply for the money? If they had applied to him, at any time between February, 1861 *578 and August, 1865, he would have acted in direct disobedience to the unrevoked decree of the court if he had refused payment and would have rendered himself liable, in some form, to just censure or punishment. The two decrees are utterly inconsistent with' each other. In its legal effect, the decree of August, 1865, annuls the decree of February, 1861; and, as the Chancellor had no power to reverse his own decree, or a decree pronounced in the same court and in the same cause at a previous term, we hold that this was error of law apparent on the face of the decree itself, for which a bill of review would lie, without leave; and that his Honor, the Chancellor, erred in dismissing the bill of review: See Burson v. Dosser, 1 Heis., 754, as to error of law apparent on the face of the decree; and 1 Story’s Eq. Pl., § 407, and n. 1, referring to Whiting v. Bank United States, 13 Peters, 13, 14. It was also error in the Chancellor, first to grant, and then to refuse the repeal; and the case was properly brought here by writ of error.
3d. As the writ of error brings up the entire cause, it is unnecessary to consider the effect of the answer as overruling the demurrer, or that part of the bill of review which seeks to make an issue as to the kind of funds received by the complainant.
This was new matter which could not be properly introduced into the bill, without leave; and had this been assigned as one of the causes of demurrer to the bill of review, it would perhaps, have been sustained.
Although the demurrer, plea and answer, may be joined, the more correct practice, in the case of a pure bill of review, would be, to demur to the bill: Story’s *579 Eq. PL, §§ 634, 638. And while an answer, in some cases, may be proper to a bill of review, it can not, as seems to be the object in this case, go back behind the decree, and again put in issue matters which were in issue before the decree was pronounced.
4th. Without considering various other questions which have been discussed before us, and without extending this opinion by a protracted statement of the reasons which have led to the result at which we have arrived, let it suffice to declare that the substantial justice of this case will be reached by reversing the decree of the Chancellor on the bill of review, and by remanding the cause for the execution of the decree of February, 1861; and limiting the further investigation in the court below to but three inquiries. Let it be ascertained, under the direction of the Chancellor, whether the complainant collected the amount for which said decree was rendered in current bank notes, and whether he has, at all times, kept said funds entirely separate and distinct from his own moneys; and if he has on hand, the identical fund received by him, let him pay said notes into court in satisfaction of the decree. We give this direction in accordance with the rule stated in Edw. on Receivers, 2d ed., 592. If the complainant does not show that he has the identical fund on hand, let him pay the same into court without interest from the date of the decree in February, 1861, to that of the decree in August, 1865, but with interest from August, 1865. He is exonerated from the payment of interest in consequence of the directions contained in the decree of February, 1861, and because of the state of war existing during the in *580 terVal; but let him be charged with interest from August, 1865, because he could then have brought, or offered to bring, the fund into court. The Chancellor will ascertain and declare who is entitled to the fund, but will not hear proof as to any other matter in the cause except the judgment against J. B. Gregory and others, for |289.79, and the balance due on L. C. Winkler’s note; as to which, if not embraced in the said sum of $1,023.43, he will hear proof, and he will make all necessary orders and decrees for the proper distribution of the fund. The costs in this court, and the costs of the bill of review, in the court below, will be paid by the defendants who filed the joint demurrer, plea, and answer. All other costs of this cause, will be paid out of the fund; but the fees paid, or agreed to be paid by complainant to his counsel, for their services in this case, will not be considered as a charge upon the fund, but must be accounted for by the complainant personally.
Let the decrees of August, 1865, and February, 1866, be reversed; and let the cause be remanded for the execution of the decree of February, 1861, and the purposes above directed.