ALEXANDER HODGES *v.* N. E. SCREW CO., ET AL.

A Petition for the rehearing of a suit in equity, may be filed within one year from the date of the final decree, by analogy to the rule in relation to new trials in suits at law.

Former opinion reaffirmed,—That Courts of Equity have no jurisdiction over corporations, as such, at the suit of a stockholder, for violations of charter.

THIS was a petition for a rehearing of the bill in equity between the same parties, reported in R. I. Reports, vol. 1. p. 312. The material facts and arguments are there fully stated, or set forth in the opinion of the Court in this case. The proceeding being a novel one in this State, the petition is here given at length. No answer was filed by the defendants, but several affidavits were submitted, which are immaterial in the view taken by the Court.

ALEXANDER HODGES
v.                                    } IN EQUITY.
NEW ENGLAND SCREW CO. AND OTHERS.

*Providence, sc.*                          SUPREME COURT,        }
                                    MARCH TERM, A. D. 1852.

Petition for a rehearing and for leave to file a supplemental bill in the nature of a bill of review.

Alexander Hodges, the complainant in said Bill in Equity, applies to this Honorable Court for a rehearing of said cause, and for leave to file a supplemental Bill of Review, because the decision thereof was erroneous in this:

That Courts of Equity have no jurisdiction over corporations, as such, at the suit of a stockholder, for a violation of charter:— Whereas, Courts of Equity have jurisdiction over corporations as such, at the suit of a stockholder for a violation of charter, in' certain cases, and in the case at bar.

Because the conduct of the directors and the corporation was a breach of trust, and a constructive fraud, in this,—That they purchased stock in the Iron Company, and lent their monies and credit to the Iron Company, and thus engaged in and carried on the business of said Company, and thereby caused a great loss to this complainant by the diminished value of his stock in said corporation.

Because the complainant was entitled to an account and an injunction in said cause.

Because the Screw Company and every stockholder have suffered very great loss and damage in consequence of said connection with the Iron Company, which loss and damage were not known until after the proofs were taken in said cause, and the same had been heard.

(Signed,)      ALEXANDER HODGES.

The undersigned make oath ,that in their opinion the said cause should be reheard according to this petition.

(Signed,)      J. K. ANGELL,
C. S. BRADLEY.

And sworn to by the complainant and his counsel abovenamed, on the eighth of March, 1852.

*J. K. Angell* and *C. S. Bradley* for petitioner.

*Samuel Ames* and *T. A. Jenckes* for defendants.

GREENE, Chief Justice, delivered the opinion of the Court:

This is the first application for a rehearing which has been made in this Court.

The decree was entered on the twenty-fourth day of March Term, 1851, and this petition was filed on the ninth day of March, 1852. The first question is whether the petition, considered as a mere petition for rehearing, was filed in season.

By the English practice the decree is drawn out and by order of the Court entered and subsequently enrolled. The application for a rehearing must be made after the decree is entered and before enrolment, and may be made at any time within these limits. The enrolment is at the instance of the party.

By our practice the decree is drawn out and the clerk is directed by the Court to enter it, of which order he makes a certificate on the decree and places it on the files of the Court, and thereupon it becomes a decree. The recording is not necessary to give effect to it.— The English practice is to incorporate into the decree the pleadings and proof in the cause. The practice of this Court is simply to refer to the pleadings and proof in general terms, which, by such reference, become a part of the decree in the same manner as if they were fully recited in it. The practice of enrolment has never been adopted here.

The entry of a decree, though of the same effect as an enrolment, so far as giving effect to the decree is concerned, still is no bar to an application for a rehearing: if it were, the party would be deprived of the right altogether, inasmuch as he could not make the applica-

tion until the decree was entered.   Within what period,
then, shall the application be made ?

We think the statute fixing the time within which peti-
tions for new trials at law shall be filed, furnishes a pro-
per rule for the guidance of the Court in applications of
this kind.   An equity cause is ordinarily more complex
than a suit at law, and the Court decide upon the facts
as well as the law.   There is, therefore, a greater lia-
bility to mistake.   And the jurisdiction of this Court
being original in equity causes, without appeal, there is
no mode of correcting errors, except by rehearing or
bill of review.   We think, therefore, as much time at
least ought to be allowed to parties in equity to apply
for a rehearing as to parties at law to apply for a new
trial.

We adopt the time fixed by our statute as a rule of
practice merely, and subject to future alteration by a
new rule to be established by this Court, should experi-
ence prove any alteration to be necessary.

In relation to the causes for a rehearing, the Eng-
lish practice is to grant it on the certificate of counsel.
The rule adopted in the Circuit Courts of the United
States, and as far as we know in the Courts of the
States, is to grant it, if the Court, in the exercise of its
discretion, think the cause ought to be reheard.

We think this the better rule, but there being no
appeal from the decrees of this Court, the discretion
should be exercised liberally in favor of a rehearing.

The Supreme Court of the United States do not grant
a rehearing unless a member of the Court who concurred
in the decision desires it, and when that is the case, it
will be ordered without waiting for the application of

counsel. *Brown, Administrator of Aspden et al.* v. *Aspden's Administrator et al.* (14 Howard, 25.)

The first case assigned for a rehearing is stated as follows: " Because the decision thereof was erroneous in this, that Courts of Equity have no jurisdiction over corporations as such at the suit of a stockholder for a violation of charter:—whereas Courts of Equity have jurisdiction over corporations as such at the suit of a stockholder for a violation of charter in certain cases, and in the case at bar."

The jurisdiction sought to be exercised over the Screw Company was by decree ordering that all connection between them and the Iron Company should be dissolved, and that all endorsements by the Screw Company for the Iron Company should cease. The bill does not state specifically how the dissolution was to be effected, whether by an order on the Screw Company to sell the stock, or a reference to a master to effect the sale.

Since the decree in this cause was rendered, the connection between the two companies has been dissolved, and endorsements by the Screw Company for the Iron Company have ceased. So far as these objects are concerned, there is nothing now for the decree to act upon, and the question of jurisdiction for these objects has become immaterial. Nevertheless, as the question is new and important, we think it proper to review the decision which we have made upon this point, and to state how far we consider that decision as authority.

At the argument of the cause we considered this question one of great difficulty and importance. We were unable to find in the reports to which we had access an English or American case, in which such a jurisdiction

had been exercised or asserted, except the case of *Solomon* v. *Lang et al.*, reported in the London Jurist for April and June, 1850.

The decision of the New York Courts was against it, upon the ground that a Court of Chancery had no power at common law to inquire into breaches of charter, whether at the suit of shareholders or on behalf of the State.

Up to the filing of the bill in this cause such a jurisdiction was unknown in Rhode Island. It was most important in its consequences, placing every corporation not of a municipal character, under the power of this Court at the suit of any stockholder, and that, too, upon new, unsettled and difficult questions touching the extent and limits of their corporate powers.

The mode in which this jurisdiction must be generally exercised, is by injunction, the strongest power of a Court of Chancery, exercised without the intervention of a jury, and the Court in exercising it having from the nature of the case a larger discretion than in administering any other branch of chancery jurisdiction.

Under the influence of these views, and supposing the jurisdiction had not been exercised either in England or this country, we did not feel ourselves justified in taking in Rhode Island the lead of the other States in the exercise of so important a power. We thought if the public good required that this Court should possess the power, the safe and wise course was to do as was done in New York, to confer it by a legislative act, in which its extent and limits could be accurately defined.

Since the argument of this cause in 1850, several cases have been decided in England and one in this country,

establishing the jurisdiction over a certain class of corporations so far as to administer a preventive remedy by injunction; and several decisions in England of a similar character and earlier, though recent, date, have been cited at the present hearing. But these cases leave the extent and limits of the jurisdiction quite unsettled, and none of them go to the extent asked for by the present bill,—that is, to order undone what had been done, by directing a sale of the stock in the Iron Company.

The remedy administered has been to enjoin the corporation from doing the act intended to be done, but not to order them to undo what they had done. The cases have been against railroad corporations, there as here invested with extensive powers over public and private rights, and the English Courts have been much embarrassed by the novel and difficult questions which have arisen.

In *Coleman* v. *Eastern Counties' Railway Co.* (10 Bevan, 1,) decided in 1846, Lord Langdale thus expressed himself in relation to this subject: "I think it right to observe that companies of this kind, possessing most extensive powers, have so recently been introduced into this country, that neither the legislature nor courts of justice have been yet able to understand all the different lights in which their transactions ought properly to be viewed. We must, however, adhere to ancient, general and settled principles, so far as they can be applied to great combinations and companies of this kind. It is a mistake to view these companies, having such great powers over private and public right, in the light of common partnerships, and subject to no greater vigilance than common partnerships."

And as late as 1851, so unsettled was this jurisdiction

in the English chancery, that Lord Langdale called upon Parliament to interfere, and to define its extent and limits, as the only means of preventing the litigation which would otherwise arise. I refer to his opinion in *Brown* v. *Monmouthshire Railway and Canal Co.* (4 Eng. L. & E. Rep. 113,) decided in 1851, in which he defines the jurisdiction as it had been exercised up to that period. He uses the following language : " The jurisdic- " tion of this Court in several instances has been applied in preventing or checking the erroneous conduct of corporations created by act of Parliament for public purposes. But it is not settled to what extent, or subject to what particular limitations the jurisdiction ought to be exercised, and unless Parliament should think fit to lay down rules for the guidance of the Courts, litigation to a considerable extent must take place.

" The class of cases in which this Court has often been called upon to interfere, are those which arise out of a combination of acts which are in themselves illegal, and considered as breaches of contract with the public, acts which are breaches of contract, express or implied, with the subscribers to the undertaking, and acts erroneous or breaches of contract, incapable of being rectified by the shareholders themselves in the exercise of their own powers."

In practice, the jurisdiction, as stated by Lord Langdale, has been limited to corporations created by act of Parliament for public purposes, and the remedy applied has been by injunction to prevent them from doing an illegal act, or to stop them when in the course of doing it.

There is a reason for sustaining the jurisdiction over such corporations which does not exist in the case of

trading or manufacturing corporations, which is, that if a corporation of the former class exceed their powers, they may thereby become involved in responsibility to the land owners as well as to the public; whereas in the case of a trading or manufacturing corporation, the illegal act affects no private party but themselves.

In *Cohen* v. *Wilkinson,* (12 Bevan, 138,) Lord Langdale refers to this difference. He says: " I am clearly of opinion that the Directors act illegally as against the land owners, and if there were not, as I think there are, sufficient reasons for saying they act illegally as against the shareholders, I should have been glad to hear an answer to the question put by Mr. Cole,—why are the Directors to be allowed to involve the shareholders in an illegality, and the consequences of an illegality towards the land owners."

Whether Courts of Chancery will extend their jurisdiction over all corporations, such as trading and manufacturing, and whether they will administer a corrective remedy by ordering to be undone what had been done, as in the present case, by ordering a sale of the stock in the Iron Company, is still unsettled.

Two American cases have been cited in the argument of the present petition.

But in these, as in the English cases, the remedy administered in the one case and asserted in the other, was to prevent the corporation from doing an illegal act.

The only case cited of a jurisdiction over a private corporation, is the case of *Ward* v. *the Society of Attorneys,* (1 Collier, 370,) and there the majority were proceeding to surrender up the charter and dissolve the corporation.

We have thought it our duty to review in this general form this new and unsettled jurisdiction, and to say in view of the novelty and importance of the subject, and the additional light which has been thrown upon it since the trial, we consider the jurisdiction of this Court over corporations for breaches of charter at suit of shareholders, and how far it shall be extended, and subject to what limits, as still an open question in this Court.

The remaining cause assigned for rehearing is as follows: "Because the conduct of the Directors and the Corporation was a breach of trust and a constructive fraud, in this, that they purchased stock in the Iron Company and lent their name and credit to the Iron Company, and thus engaged in and carried on the business of said Company, and thereby caused a great loss to this complainant by the diminished value of his stock in said Corporation."

This involves the question whether the Directors ought to be holden individually responsible for the damages caused by the taking of the stock in the Iron Company. This question was very elaborately argued at the trial, both upon the law and the evidence, and after a careful revision of both, we feel bound to say, we see no reason to change the opinion which has been delivered, and to order a re-argument of this question would subject the parties to useless expense. We think a Board of Directors acting in good faith and with reasonable care and diligence, who nevertheless fall into a mistake, either as to law or fact, are not liable for the consequences of such mistake.

But aside from the conduct and motives of the Directors, which as we have seen were not such as to subject them to personal responsibility for damages, we think

the conduct of the complainant renders such a claim inequitable on his part. The complainant, at a meeting of the Board at which it was voted to subscribe for the stock in the Iron Company, voted against it, and always objected to it as a stockholder and Director, unless when subscribed for, it should be distributed among the stockholders of the Screw Company. Upon this condition he was willing the stock should be subscribed for, and not otherwise.

But he did not inform the Directors or corporators at any time before he filed his bill, that he considered the act illegal and would not be bound by it, unless the stock were distributed,—nor did he assign as a reason for requiring its distribution, that he considered it illegal or unprofitable for the Screw Company to hold it.— The reason he gave for requiring its distribution was, that he wanted his share of it to sell, and thereby raise money to meet a pecuniary engagement.

Now we think if the complainant intended to treat this act as illegal and to hold the Directors personally answerable for damages, he ought to have told them so; he ought to have said then what he says now. By the course which has been pursued, if the Iron Company stock should prove profitable, the complainant would reap his share of the profit; if disastrous, the Directors must make him whole; in other words, he takes his chance of profits and at the same time holds against the Directors a claim to make good all losses, of which he gives them no notice and of which they are ignorant. And it is to be observed in this connection, that the bill was not filed until after the stock was taken, and after, according to the allegations of the bill, it had been found to be unprofitable.

The counsel for the complainant contended that the filing of the bill was notice to the Directors of the mistake and the claim for damages, and that the complainant is entitled to recover of them his share of the loss which accrued in consequence of their continuing to hold the stock in the Iron Company after such notice and claim. But we cannot try such a claim under the present bill.

If upon this bill the decree was that the Directors were responsible for taking the stock, and the damages which accrued after the filing of the bill were a mere continuation of what had accrued before, we might perhaps have directed the master to take an account down to the time of making his report. But the decree is that the complainant has no claim against the Directors for damages upon the case made upon the bill, and we do not think we can try under this bill a claim to damages which is not stated therein, and to which the defendants have had no opportunity to answer, and which arises from and after the filing of the bill and the conduct of the Directors subsequent thereto.

The notice and the conduct of the Directors in continuing to hold the stock after notice, and the damages, all were subsequent to the filing of the present bill. We think such a case should be made out upon pleadings and proof in the ordinary course of a bill in chancery; the decree dismissing the present bill will be no bar to such a bill.

In this connection it is proper to state that we do not think the taking of the stock in payment of the rolling mill and as the means of selling the rolling mill, was objectionable, if it had been taken with a view to sell

Alexander Hodges *v.* New England Screw Co. et al.

again. The mistake was in taking it with the intent permanently to hold it.

We do not give any opinion as to the effect of the transfer of the complainant's stock in the Screw Company,—the view we have taken of the merits of the petition rendering such an opinion unnecessary.

The petition states that the complainant is entitled to an account, because the Screw Company and every stockholder have suffered very great loss and damage in consequence of said connection with the Iron Company, which loss and damage were not known until after the proofs were taken in said cause and the same had been heard. But if the complainant is not entitled to damages under the present bill, there is no object in taking an account, and the evidence derived from experience subsequent to the filing of the bill is irrelevant.

*Petition dismissed.*