STEPHEN O. RANDALL *vs.* SAMUEL W. PECKHAM *et al.*[1]

Stephen O. Randall gave a promissory note and a mortgage securing it to H. C. Pabodie. Pabodie died leaving a will, which gave the bulk of his property to Olive G. Pettis. This will was set aside by the court.   After Pabodie's death, Randall brought a bill in equity against Pettis and Pabodie's administrator, to compel Pettis to pay the note, and the administrator to discharge the mortgage; claiming under the following written instrument: —

"PROVIDENCE, *October 26th,* 1868.   This is to certify, that it is agreed between myself and Olive G. Pettis, that if she receives after my death a part of my estate, she, the said Pettis, does agree to cancel the mortgages on the estates of B. M. Hubbard and Stephen O. Randall, and present them with their notes to said Hubbard and said Randall, and make the amount of Hubbard's present equal to that given Randall.

"H. C. PABODIE."

---

[1] See 10 R. I. 545.

*Held,* that this instrument was neither a release of the note, nor a discharge of the mortgage, nor a conditional assignment of them.

*Held,* further, that it could not operate as a *donatio causa mortis.*

*Held,* further, that it was not a contract binding Pabodie's estate.

Certain sums having been paid to Pettis by Pabodie's administrator, by the direction of Pabodie's next of kin : —

*Held,* that these sums were received by Pettis, not from Pabodie's estate, but from the estate of such next of kin.

*Held,* further, that the bill in equity could not be maintained.

A petition for the rehearing of a cause in equity may be filed within one year from the date of entry of the final decree, by analogy to the rule governing new trials in suits at law, this being the rule adopted in *Hodges* v. *New England Screw Co.* 3 R. I. 9, and now affirmed.

BILL IN EQUITY brought by the complainant, a mortgagor, against Peckham, the administrator of one Pabodie, the mortgagee, to compel him to surrender the mortgage note and to cancel the mortgage, according to an alleged agreement made by Pabodie.

Pabodie made a will September 26, 1868, by which he gave the bulk of his property to Olive G. Pettis, the other respondent.. This will was set aside by a decree of this court, and Peckham was afterwards appointed administrator. By agreement between Mrs. Pettis and Pabodie's next of kin, Peckham, as administrator, by the direction of the next of kin, paid to her certain sums.

The agreement on which the relief asked by the bill was claimed is given in the opinion of the court.

*Charles S. Bradley & Edwin Metcalf,* for the complainant.

I. The written undertaking, verbally adopted by Mrs. Pettis, operates as an equitable discharge and cancellation of the complainant's note and mortgage.

II. The note and mortgage passed to the complainant by Pabodie's act, which constitutes a valid *donatio causa mortis.*

The case of *Duffield* v. *Elwes,* 1 Bligh N. S. 497, in the House of Lords, decided that the delivery of a note and mortgage was good as *donatio causa mortis.*

This is now settled law in this country and England.   See *Ward* v. *Turner,* 1 Lead. Cas. Equity, *721, note.

The papers in this case, however informal, operate in equity as a conditional assignment of the note and mortgage, which, upon the fulfilment of the condition becomes absolute and complete.

The case of *Gardner* v. *Gardner*, 22 Wend. 526, is a case of the verbal forgiveness of a debt not so strong as this in writing; Lord Hardwicke's decision relied upon is in point also.

In *Moore* v. *Darton*, 4 De G. & Sm. 517, the delivery of a receipt for the money was held valid as a *donatio causa mortis*. A discharge of the debt by another writing is equivalent to the surrender of the receipt for it. *Mean* v. *Mean*, 22 Vt., as cited in *Ward* v. *Turner*, 1 Lead. Cas. Equity, *721, note.

III. The defendant Pettis, if excused from carrying out the undertaking of Pabodie, fully approved and ratified by her, commits a gross fraud on the plaintiff.

IV. The undertaking is valid as a contract: for Pabodie's promise was upon consideration of the service rendered and of the relations of the parties, and was, as the evidence shows, binding upon his estate; for a promise that a devisee will surrender an asset is binding upon the estate of the testator, and the devisee's assent to it makes it binding upon him also.

*James Tillinghast & Thomas C. Greene*, for the respondent Peckham.

*Wingate Hayes*, for the respondent Pettis.

*July* 21, 1877. MATTESON, J.    This is a bill in equity brought by Stephen O. Randall against Samuel W. Peckham, administrator upon the estate of Henry C. Pabodie, and Olive G. Pettis. Its purpose is to compel the defendant Pettis to pay and surrender to the plaintiff a certain promissory note, for seven thousand five hundred dollars, dated July 1, 1868, given by him to Pabodie, and now held by the defendant Peckham, as Pabodie's administrator, and to cancel and discharge the mortgage upon the plaintiff's estate, securing its payment, and in case of her continuing refusal or inability to do so, to compel the administrator to surrender the note, and cancel the mortgage.

The plaintiff rests his claim for relief upon a writing of which the following is a copy : —

"PROVIDENCE, October 26th, 1868.

"This is to certify, that it is agreed between myself and Olive G. Pettis, that if she receives after my death a part of my estate, she, the said Pettis, does agree to cancel the mortgages on the estates of B. M. Hubbard and Stephen O. Randall, and present

them with their notes to said Hubbard and said Randall, and make the amount of Hubbard's present equal to that given Randall.                                                    H. C. PABODIE."

. This writing was drawn up by the plaintiff, and signed by Pabodie on the day of its date, during his last illness, and three days before his death, which occurred October 29, 1868.

The plaintiff contends, first, that this writing operated in equity as a release of the note, and a discharge of the mortgage, or, as an assignment of them, upon the condition that Mrs. Pettis should receive after Pabodie's death a part of his estate, and that such release and discharge, or assignment, have become absolute by the happening of the condition, Mrs. Pettis having received, as he alleges, since the death of Pabodie, a part of his estate. We cannot give this effect to the writing. There is nothing in it, or in the testimony, to indicate that Pabodie intended by it .either to release the note and discharge the mortgage, or to assign them ; on the contrary, the writing contemplates that they are to become the property of Mrs. Pettis. But even if it could be considered as a release of the note and discharge of the mortgage, or as an assignment of them, the condition specified in it upon which it was made has failed. Mrs. Pettis did not after Pabodie's death receive a part of his estate. His will, by which he had given the bulk of his property to her, was set aside. His real estate, if he had any, vested in his heirs at law, and his personal estate in his administrator ; and though the administrator, by the direction of the next of kin, has paid to Mrs. Pettis from time to time portions of the personal estate, she has received such personal estate as the property of the next of kin of Pabodie, and not as his estate.

The plaintiff contends, secondly, that the signing and delivery to him of. the writing above recited passed the note and mortgage as a *donatio causa mortis.* We do not think so. To make a valid *donatio causa mortis* of a chose in action by the delivery of some document relating to it, the document must be *essential* to its recovery, as, for instance, a bond and mortgage ; *Duffield* v. *Elwes*, 1 Bligh N. S. 497 ; or receipt for money loaned. *Moore* v. *Darton*, 4 De G. & Sm. 517. The writing in question was not of that character. Moreover, as already stated, it contem-

plated that the note and mortgage were to pass to, and become the property of, Mrs. Pettis.

The plaintiff contends, thirdly, that the writing is valid as a contract, and binding as such upon Pabodie's estate, and upon Mrs. Pettis, because, as he alleges, assented to by her.

It will be perceived that the writing does not contain any promise or agreement upon the part of Pabodie to do anything whatever in relation to the note and mortgage. It purports to be merely his certificate that Mrs. Pettis had agreed with him to do certain things upon the happening of the condition set forth. We see no reason for treating it as a contract of Pabodie.

It is not necessary to determine whether or not Mrs. Pettis made the agreement with Pabodie set forth in the writing, and subsequently promised the plaintiff to perform it ; for assuming that she did, and that it could be enforced against her as a declaration of trust, we think that under the proper construction of the agreement she would be required to surrender the note and cancel the mortgage, only in case they came into her possession under the will as a part of Pabodie's estate, and that she would not be required to purchase them in order to perform the agreement.

We see no ground upon which the bill can be maintained against either defendant.

*Decree dismissing bill and giving to each of the respondents his costs entered July* 21, 1877.

Subsequently the complainant filed in one paper a " petition for rehearing and a bill of review," stating that, —

" The court finds that Mrs. Pettis did not receive the personal estate as the estate of Henry C. Pabodie.

" Whereas the testimony shows that the administrator at one dividend paid Mrs. Pettis by passing to her a certain mortgage, and Mrs. Pettis swears that she received funds from the estate.

" And because the signing and passing the paper writing to the plaintiff passed the note and mortgage as a *donatio causa mortis.*

" And because the writing is binding upon Pabodie's estate and upon Mrs. Pettis, because she assented to it and the conditions were fulfilled.

" And also, because if the will of Pabodie was set aside in pursuance of an agreement entered into between Mrs. Pettis and the heirs of Pabodie, whereby she received a part of the estate, she is still bound to cancel the mortgage and live up to the writing.

" And also, because the paper writing signed by Pabodie acted as an equitable assignment of the mortgage, and should be so considered.

" And because there are other statements in the opinion which are erroneous and should be corrected."

This was filed September 13, 1877, after the close of the March Term, 1877 ; the court having adjourned July 28, 1877, to meet according to law.

To this petition and bill the respondent, Peckham, demurred. Both respondents also moved to dismiss it as a petition for a rehearing on the ground that it was filed too late.

These motions to dismiss and the demurrer were heard at the October Term in Providence County.

*October* 13, 1877. DURFEE, C. J. A majority of the court are of the opinion that the petition is duly presented as a petition for rehearing. It certainly is, unless the rule established in *Hodges* v. *New England Screw Co.* 3 R. I. 9, has been annulled, or unless the case itself has been or ought to be overruled upon this point. We do not find that the rule has been annulled, and we do not think the case has been or ought to be overruled. The rule adopted in *Hodges* v. *New England Screw Co.* is, that a petition for rehearing may be filed at any time within a year after the entry of the final decree, by analogy to the rule in relation to new trials in suits at law. In England a petition for rehearing is in order at any time after the decree is entered and before it is enrolled ; there being an interval of more or less duration between the entry and the enrolment. In this country we have no enrolment, the entry itself being for most purposes equivalent to an enrolment. The English practice is therefore inapplicable in this country. Some time after the entry of the decree must be allowed for the petition for rehearing, or the proceeding will have no place in our practice ; for, technically speaking, a petition for rehearing is not in order until after the decree has been entered. It is true that in our practice cases are often

reheard before the decree is entered ; but the practice is irregular, and such a rehearing is to be considered rather as a reargument than as a rehearing technically so called. We think it is desirable to retain the proceeding for reasons stated in *Hodges* v. *New England Screw Co.*, and in order to retain it we must allow some time for presenting the petition ; and we know of no better limitation than that · of one year, by analogy to the rule in relation to new trials in suits at law. The motion to dismiss the petition is therefore overruled. The demurrer, being irrelevant, is also overruled.

POTTER, J., dissenting. This was a petition for a rehearing. Subsequently the title only of the petition was amended, so as to style it a petition for rehearing and review, but without altering the body of the petition.

The decree was entered July 21, 1877, and was a final decree so far as to dispose of every question and of costs, so as to leave no question open between the parties.

The respondent to the petition appears voluntarily, and moves to dismiss it as not filed in time, and as peradventure the court might consider it to be a bill of review, demurs to it.

The petitioner, in support of his motion, cites *Hodges* v. *New England Screw Co.* 3 R. I. 9. The petitioner there filed a petition for rehearing, and for leave to file a supplemental bill in the nature of a bill of review. The petition was filed just within a year after the entry of the final decree dismissing the bill. The court in their opinion hold the entry of the decree under our practice to be equivalent to the English enrolment, and go on to say that a cause may be reheard any time within a year, and that they adopt ·this rule from analogy' and as a rule of practice merely.

A great deal of the confusion in equity practice on the subject of rehearing is owing to the loose manner in which the expressions, reargument and rehearing, have been used. The word rehearing has been used to denote a reargument upon the same facts before decree, a technical rehearing before enrolment, and sometimes generally for any mode of reëxamining a case.

Upon the question of what is a *final decree,* a question which is somewhat connected with the practice as to rehearing, there has been as much confusion. And it grows out of the fact that·the

question is sometimes what is final within the meaning of some statute so as to be appealed from.

In *Forgay et al.* v. *Conrad,* 6 How. U. S. 201, Taney, C. J., says that a decree may be final on the merits, and may yet not be final in a technical sense. *Whiting et al.* v. *The Bank of the United States,* 13 Pet. 6, 15 ; *Michoud et al.* v. *Girod et als.* 4 How. U. S. 503 ; and see *Holmes* v. *Jennison et als.* 14 Pet. 540, 562 ; *Gibson et al.* v. *Rees et als.* 50 Ill. 383. Strictly, a final decree was only one enrolled. Daniel's Chan. Prac. 1000, 1010. There could be no execution until enrolment. Gilbert For. Rom. 171, 183 ; Mitford Eq. Pl. by Tyler, 470.

In England, after a decree had been drawn by the registrar, and before it had been entered, it could be corrected on petition. After entry the proceeding was technically a rehearing, or a bill in the nature of a bill of review, as the case might be. Story Eq. Pl. § 421, note. This might be granted upon the record as it was, or for new matter. But it was necessary in some cases to enroll even an interlocutory decree.

Now if the court in *Hodges* v. *New England Screw Co.* 3 R. I. 9, a fterholding that in our practice entry was equivalent to enrolment, mean to say that a technical rehearing may be had within a year after enrolment, then the decision is contrary to the whole course of English decision, and of American decision also, in those states whose chancery practice is of any authority.

If they meant to use the word rehearing to include all modes of reëxamination, and to say that a bill of review would not lie after a year, then that is contrary to the general course of practice, and was usurping a power which belonged to the legislature alone.

And although the court do not in so many words say that there could be no reëxamination of a cause in equity after a year, the whole reasoning of Judge Greene leads to that conclusion ; otherwise there was no sense in referring to the analogy of cases at law, as at law no rehearing could in any case be had after a year, except under the power formerly exercised by the General Assembly.

It was the first time the question had been raised. And the want of care with which the chief justice uses language is shown by his reference to the case of *Brown et al.* v. *Aspden*

*et als.* 14 How. U. S. 25. He cites this case as holding that the Supreme Court of the United States do not grant a rehearing unless desired by some member of the court. What Taney, C. J., did say was, that in a court of chancery appeal, such as the English House of Lords and the United States Supreme Court, there is no such thing known as a technical rehearing ; that a reargument may be had, but even this will not be had after judgment entered, unless desired by some member of the court, and in no case after the term.

And it is a matter of notoriety that many of the positions advanced by the court in the case of *Hodges* v. *New England Screw Co.*, already referred to, were most severely criticised by the profession at the time, and are very inconsistent with the general course of judicial decision since.

But if this limitation of a year was valid as a rule of practice, is it in force now ?

It is to be noticed that when Ames, C. J., who did know something about equity practice, came in as chief justice, a new set of rules was made (in July, 1857), and by Rule No. 83, now in force, it was provided that in all cases where *these* rules do not apply, the practice shall be regulated by the English practice so far as applicable, or as furnishing just analogies rather than positive rules.

The old rules in force at the time of the decision in the Hodges case made no reference to the English practice, except, perhaps, indirectly, by referring to the practice of the United States Supreme Court.

And I have no doubt this was intended to introduce the English practice as to rehearings and reviews, so far as consistent with our usages.

The practical distinction between rehearings or any proceedings before final decree, and bills of review, and a distinction which will reconcile many apparently conflicting decisions, seems to be, that until the decree is so far final as to settle all questions, including costs, and to dismiss the parties out of court, they are in court and do not need a new summons. After that, a bill of review is necessary.

And the difficulty has been to decide when the parties are to be considered as out of court. A judgment or decree is for

many purposes considered under the control of the court during the term. But in equity, decrees are entered during the vacation of the law terms. And as the court in chancery is always open, it was held in Maryland, after some conflict of opinion, that the term in chancery should be considered as continuing until the new term began. Unless such a course is adopted, there would be some confusion as to decrees entered in vacation.

The United States Supreme Court by Rule No. 88 allows the Circuit Court, in cases where there is no appeal, to grant a rehearing at any time before the end of the next term.

It seems to me that we have adopted the English practice, that it is the better practice, and that we ought to adhere to it.

If we are to consider the entry of the final decree as equivalent to the English enrolment of it, then the parties in this case are out of court.

*Motions to dismiss the petition for a rehearing refused, and the demurrer overruled.*

The petition for a rehearing was then heard and refused, and a decree dismissing the petition and giving costs to each respondent was entered November 10, 1877.

NOTE. — Compare *Leach v. Jones, ante*, p. 386.